UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          Case No. 09-CR-112

TARON BARKER,

    Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR
SEVERANCE AND SEPARATE TRIALS OF
COUNTS 1 AND 2 FROM COUNTS 3 AND 4**

---

## I. BACKGROUND

On April 28, 2009, a grand jury sitting in the Eastern District of Wisconsin returned a four-count indictment naming Taron Barker ("Barker") as the defendant. Counts One and Two of the indictment charge that on or about May 19, 2006, Barker, as a principal or as an aider and abettor, took by intimidation $133,800 from the Guardian Credit Union in Racine, Wisconsin while knowingly using or brandishing a firearm, in violation of 18 U.S.C. §§ 2113(a), (d) and 2 and §§ 924(c)(1)(A)(ii) and 2. Counts Three and Four of the indictment charge that on or about February 14, 2008, Barker, as a principal or as an aider and abettor took by intimidation $209,000 from the TCF Bank in Kenosha, Wisconsin while knowingly using or brandishing a firearm, also in violation of §§ 2113(a), (d) and 2 and §§ 924(c)(1)(A)(ii) and 2.

Thereafter, on May 12, 2009, the grand jury returned a four-count superseding indictment naming Barker as the defendant. The superseding indictment includes a forfeiture allegation not included in the indictment returned by the grand jury on April 28, 2009. However, with respect to the four counts charged in the original indictment, the allegations in the superseding indictment remain

precisely the same. On June 5, 2009, the defendant was arraigned on the superseding indictment and entered a plea of not guilty. The defendant's case is assigned to United States District Judge J.P. Stadtmueller for trial. No trial date is currently scheduled.

On June 29, 2009, in compliance with the court's pretrial scheduling order, Barker filed a Motion for Severance of and Separate Trials for Counts One and Two from Counts Three and Four. That motion is now fully briefed and ready for resolution.

## II. FACTS

Barker has been charged with participating in two bank robberies: the robbery of the Guardian Credit Union in Racine, Wisconsin on May 19, 2006 and the robbery of the TCF Bank in Kenosha, Wisconsin on February 14, 2008. The details of those robberies, described below, are set forth by the government in its response brief to the defendant's motion.

Racine County bank robbery

On May 16, 2006,[1] at about 7:15 a.m., two employees arrived to open the Guardian Credit Union in Racine, Wisconsin, and were overtaken by two armed masked men. The employees were ordered to open the vault at gunpoint, and the robbers loaded money into a black bag they brought with them, stealing about $133,800. They exited the bank, and escaped in the employee's vehicle, which was later found abandoned at an apartment complex parking lot a few blocks away.

One of the robbers has pled guilty for his role in this bank robbery. He identified his accomplices as Adam Locke and Taron Barker. Locke was the brother of Taron Barker's girlfriend at that time, Adrienne Locke. The robber told police that he (the robber) and Locke were the masked gunmen who entered the bank. The robber and Locke fled the bank in the employee's vehicle after demanding her keys. After the bank robbery, as previously planned, they drove to an apartment complex parking lot a short distance from the bank where Barker was waiting for them. Barker drove them away, and took them to his residence in Caledonia, where they split up the robbery proceeds.

---

[1] Both the indictment and superseding indictment allege that the Racine bank robbery occurred on May 19, 2006; however, the government's brief asserts the robbery occurred on May 16, 2006.

2

Kenosha County bank robbery

On February 14, 2008, at 7:30 a.m., two employees arrived to open the TCF Bank in Kenosha, Wisconsin, just south of the Racine County border. They were overtaken by two armed and masked men. One of the employees was ordered to leave her keys in her car. The employees were ordered to open the vault at gunpoint, and the robbers loaded money into a black bag they brought with them, stealing about $209,000. They exited the bank, at which time a dye-pack that had been placed in the stolen money exploded. The robbers escaped in the employee's vehicle, which was driven to an apartment complex parking lot a few blocks away. The robbers exited the vehicle, and got into a vehicle that was already parked there, and left.

A white stocking cap was recovered in the vicinity of the getaway vehicle. Taron Barker's DNA was identified on this hat.

On February 19, 2008, a search warrant was executed at Barker's residence in Caledonia, Wisconsin, which is located in Racine County. Police had information that a few days earlier, Barker had attempted to exchange dye stained money at a local business.

Police located over $100,000 cash, most of it dye stained, in Barker's bedroom. They also recovered two handguns under the mattress, consistent with those used in the bank robbery. In addition, police recovered white tennis shoes that were stained with bank dye, as well as glass particles, consistent with the glass found in the vehicle stolen from the employee. (The windows were broken out by the robbers to gain entry).

(Resp. Br. 1-3.)

### III. DISCUSSION

Barker moves the court for an order granting severance of and separate trials for Counts 1 and 2 (the Racine bank robbery) from Counts 3 and 4 (the Kenosha bank robbery). Barker alleges that Counts 1 and 2 were not properly charged in the same indictment as Counts 3 and 4 pursuant to Fed. R. Crim. P. 8(a). Alternatively, Barker argues that even if the court finds that the offenses were properly charged in the same indictment, Fed. R. Crim. P. 14 requires the counts be severed. For the reasons which follow, the court will order that the defendant's motion for severance and separate trials be granted.

Fed. R. Crim. P. 8(a) permits the joinder of multiple offenses in the same indictment if the offenses are (1) "of the same or similar character," (2) "based on the same act or transaction," or (3) "connected with or constitute parts of a common scheme or plan." Generally, "there is a strong policy preference in favor of the joinder of qualifying charges and . . . the rule must be broadly construed toward that end." *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998).

The court must look to the face of the indictment to determine whether the charged offenses are sufficiently similar to be joined under the first prong of Rule 8(a)–requiring offenses be of the same or similar character. *See id*. at 475. The Seventh Circuit Court of Appeals has held that Rule 8(a) "is a rather clear directive to compare the offenses charged for categorical, not evidentiary, similarities." *Id*. at 476 (quotation omitted). In other words, "[c]ounts may be joined pursuant to this prong of the rule if the offenses 'are of like class,' even if they are not temporally or evidentially related." *Id*. Providing an example, the court stated that "[t]wo armored car robberies committed months apart are offenses of same or similar character; possessing five kilograms of cocaine and defrauding a bank, even if they occur on the same day, are not." *United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994). "Simply put," the court said, "if offenses are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned." *Id*.

The government argues that Counts 1 and 2 and Counts 3 and 4 are properly joined under Rule 8(a) because they involve offenses of the "same or similar character." I agree. Counts 1 and 2 along with Counts 3 and 4 each charge Barker with bank robbery. In each robbery, two armed and masked men jumped employees as they opened the bank; the men then ordered the vault be opened, loaded

the money in a large black bag, fled in an employee's vehicle, and abandoned the stolen vehicle for a getaway car located nearby. That is enough to make joinder appropriate under Rule 8(a).[2]

Of course joinder can be proper under Rule 8(a), and yet be prejudicial. *See Shue*, 766 F.2d at 1134. Knowing this, Barker next argues that the court should sever Counts 1 and 2 from Counts 3 and 4 pursuant to Fed. R. Crim. P. 14 because joinder of the counts "is so prejudicial that it outweighs the interests of judicial economy and efficiency." (Mot. 3.)

Fed. R. Crim. P. 14(a) authorizes the district court to sever counts that, while properly charged in the same indictment pursuant to Rule 8(a), "appear[] to prejudice a defendant or the government." The Seventh Circuit Court of Appeals has noted that, like in this instance, "where joinder is based upon the 'similar character' of the indictment's charges, the risk of potential prejudice to the defendant from a joint trial is enhanced, and the district court must therefore be especially vigilant in monitoring the proceedings for developing unfairness." *See Alexander*, 135 F.3d at 477. After close review of the counts in this case, I do find that a strong potential for such prejudice exists.

Rule 14(a) "assigns to the district court the task of balancing the cost of multiple trials against the possible prejudice inherent in a single trial." *United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002). In this case, I find that trying both offenses in the same trial would be highly prejudicial to the defendant, in part because the generic nature of each robbery makes its probative value low in the trial

---

[2] Barker relies on outdated law related to Rule 8(a) when contending that the counts should not be joined because the offenses are distinct in time and place and have no evidentiary overlap. (*See* Reply at 2.) In so stating, Barker relies on *United States v. Shue*, in which the Seventh Circuit Court of Appeals stated that joinder is appropriate under "the same or similar character" prong of Rule 8(a) when "the counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *See* 766 F.2d 1122, 1134 (7th Cir. 1985) (quotation omitted). Later, in *United States v. Coleman*, however, the Seventh Circuit Court of Appeals stated that with respect to offenses joined on the basis of "same or similar character" the court had "refocused [its] joinder inquiry away from a balancing of time and evidence factors." 22 F.3d at 134. And the court directed district courts to instead "compare the offenses charged for categorical . . . similarities." *Id*. at 133. Having done that in this instance, I find joinder to be appropriate.

5

for the other. In each robbery, two armed and masked men jumped bank employees early in the morning; the employees were ordered to open the vault, the money was loaded in a black bag, and an employee's vehicle was used to reach a getaway car located some blocks away–such a description is the fodder of any number of Hollywood movies and could be used to describe any number of bank robberies. In addition, the robberies themselves took place almost two years apart and in different counties, further distinguishing them from each other and lessening their probative value.

In addition to the low probative value of such evidence, I find that the cumulative effect of hearing the evidence of the defendant's alleged role in both bank robberies would be highly prejudicial to the defendant if both robberies were tried together. This is especially true with regards to the Racine robbery where the crux of the government's case is the credibility of Barker's alleged co-conspirator. The jury may question the veracity of the alleged co-conspirator on the stand but may find that the circumstantial and forensic evidence presented in support of the Kenosha robbery shore up the co-conspirator's testimony. The cumulative effect of hearing all of the evidence against the defendant combined with the generic nature of both crimes makes trying both offenses together particularly troubling.

Certainly it would be more efficient from the court's perspective to try the offenses together. However, because the government's evidence in support of each robbery does not overlap, I find that the efficiency lost by trying the cases separately would be nominal when compared with the prejudice to the defendant if the cases were tried together. The government admits that the evidence it intends to present in support of the Racine robbery is mutually exclusive of the evidence it intends to present in support of the Kenosha robbery. With respect to the Racine robbery, the government's case relies on the testimony of an alleged co-conspirator who will purportedly testify to Barker's involvement in that robbery. With respect to the Kenosha robbery, the government purports to have ample

6

circumstantial and forensic evidence, including the possession of cash and guns, DNA on a stocking cap left at the scene, and bank dye and auto glass in the defendant's shoe. In short, there is no overlapping evidence that this court is aware of that would necessarily be admissible in both trials. Simply put, I find that if the Racine and Kenosha bank robberies were tried together the prejudice to the defendant would greatly outweigh any benefits gained

To be sure, the government argues that Barker faces no prejudice in trying the offenses together because the Racine offense would be admissible as other acts evidence pursuant to Fed. R. Evid. 404(b) in the trial of the Kenosha offense and vice versa. *See Rollins*, 301 F.3d at 518 (finding that defendant's motion to sever pursuant to Rule 14 "meritless" because most if not all of the other robbery would have been admissible at trial as other crimes evidence pursuant to Rule 404(b)). Having reviewed the relevant case law, I do not find that the facts surrounding either robbery would necessarily be admissible during the trial of the other pursuant to Rule 404(b).

Rule 404(b) prohibits the admission of other crimes, wrongs, or acts to "prove the character of a person in order to show action in conformity therewith." However, the Rule permits the admission of evidence of other crimes for the purpose of establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Seventh Circuit Court of Appeals has created a four prong test to determine the appropriateness of using other crimes evidence:

> The evidence of the other acts must 1) be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; 2) show that the other act is similar enough and close enough in time to be relevant to the matter in issue; 3) be sufficient to support a jury finding that the defendant committed the similar act; and 4) have probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Moore*, 115 F.3d 1348, 1354 (7th Cir. 1997).

Admittedly, at this stage in the proceedings it is somewhat difficult for the court to determine with absolute clarity whether the facts surrounding either robbery would necessarily be admissible during the trial of the other under Rule 404(b). But I find it unlikely that they would be admissible pursuant to Rule 404(b). The robberies in this instance are too generic to be probative and therefore are not relevant–particularly if the evidence of one of the robberies is admitted for purposes of identity or modus operandi, as is most common in cases like this one. *See Rollins*, 301 F.3d at 518 (quoting *Moore*, 115 F.3d at 1354-55) (holding that evidence admitted under Rule 404(b) in support of identity or modus operandi must "bear a singular strong resemblance to the pattern of the offense charged"). As previously set forth above, the facts of either robbery could describe any number of robberies committed everyday, and therefore are not sufficiently similar in a manner which makes them relevant during the trial of the other or in a manner in which ensures that their probative value outweighs any danger of prejudice.

In sum, I find that proper application of Rule 14 calls for the defendant's trial on Counts 1 and 2 to be separate from his trial on Counts 3 and 4.

One final matter needs to be addressed by the court. At the same time the defendant filed his motion to sever, he filed two additional motions: a motion for release of *Brady* materials and a motion for discovery. However, on closer inspection of the two motions, the defendant is not actually requesting any action from the court. Instead, his "motions" simply provide notice to the court that "he has exercised his due process right under the Fifth and Fourteenth Amendment . . . to be provided with information within the possession or control of the United States that would tend to exculpate him at trial, or to mitigate punishment at sentencing," (Mot. 1), and that "he invoked all his rights to discovery under Fed. R. Crim. P. 12 and 16," (Mot. 1). During the defendant's arraignment on June 5, 2009, the government indicated that it would be abiding by the open file policy as defined by

8

Criminal Local Rule 16.1(b) (E.D. Wis.), and therefore, the defendant's "motions" are unnecessary and will be denied as moot. If at a later date, the defendant discovers that the government is not abiding by the open file policy and the defendant has taken the steps set forth in Crim. L.R. 16.1, the defendant may move the court for any relief he deems the rules warrant.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to sever (dkt # 12) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the defendant's motion for release of Brady materials (dkt # 13) and motion for discovery (dkt # 14) be and hereby is **DENIED** as **MOOT**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Criminal Procedure 59(a), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 21st day of July, 2009, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge